UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GREAT MIDWEST INSURANCE
COMPANY,

    Plaintiff                               CASE NO.:

vs.

UNLIMTED ELECTRICAL CONTRACTORS
CORP., UNLIMITED COMPANIES, LLC,
UNLIMITED CUSTOM POOLS & SPAS, INC.,
and MITCHELL PAGEREY.

    Defendants.

_____/

## COMPLAINT

Plaintiff, Great Midwest Insurance Company ("GMIC"), sues Defendants, Unlimited Electrical Contractors Corp. ("UECC"), Unlimited Companies, LLC ("Unlimited"), Unlimited Custom Pools & Spas, Inc. ("UCPS"), and Mitchell Pagerey and alleges:

### PARTIES, JURISDICTION AND VENUE

1. GMIC is a foreign for-profit corporation organized and existing under the laws of the State of Texas with its principal office and place of business located in Houston, Texas, making it a citizen of Texas.

2. Defendant, UECC, is a for-profit corporation organized and existing under the laws of the State of Florida and with its principal office and place of business located in in Pompano Beach, Florida, making it a citizen of Florida.

3. Defendant, Unlimited, is limited liability company organized and existing under the laws of the State of Florida and with its principal office and place of business located in Pompano Beach, Florida. On information and belief, Defendant Mitchell Pagerey is the sole member of Unlimited.

4. Defendant, UCPS, is a for-profit corporation organized and existing under the laws of the State of Florida and with its principal office and place of business located in in Pompano Beach, Florida, making it a citizen of Florida.

5. Defendant, Mitchell Pagerey, is a Florida citizen who resides in Boca Raton, Florida, making him a citizen of Florida.

6. This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332 (a) because Plaintiff and Defendants are citizens of different states.

7. The causes of action alleged herein fall within the jurisdictional limits of the Court because GMIC seeks to recover more than $75,000.00 from the Defendants.

8. Venue is proper in this Court because one or more of the Defendants reside in or have their principal place of business within the boundaries of the Southern District of Florida and because one or more Defendants reside in or have their principal place of business located in one of the counties within the province of the Miami Division of this Court.

## GENERAL ALLEGATIONS

9. As part of its business, GMIC issues payment and performance bonds and it stands as surety for construction contractors.

10. In connection with its work, UECC, from time to time, required surety payment and performance bonds.

11. To induce GMIC to issue payment and performance bonds on its behalf, UECC, along with Unlimited, UCPS and Pagerey (collectively referred to herein at times as "Indemnitors") entered into an indemnity agreement with GMIC.

12. Specifically, on or about December 14, 2018, the Indemnitors each executed a General Indemnity Agreement ("GIA") in favor of GMIC, its affiliates and agents. A true and correct copy of the GIA is attached hereto and incorporated herein as **Exhibit "A"**.

13. The execution of the GIA, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to GMIC issuing any bonds naming UECC as principal.

14. According to the GIA, the Indemnitors agreed, among other things, to:

> …exonerate, indemnify, and hold harmless [GMIC] from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [GMIC] may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees (a) by having executed or procured the execution of the bonds; or (b) in making an independent investigation of any claim, demand, or suit; or (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether [GMIC], in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend [GMIC]; or (d) in enforcing any of the covenants, terms and conditions of this Agreement.
> GIA, ¶ 2

15. The Indemnitors also agreed in the GIA that:

> [GMIC] shall have the exclusive right to adjust, settle, or compromise any claim, demand, suit or any other proceeding arising out of any bond against [GMIC] and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors.

GIA, ¶ 3

16. The Indemnitors further agreed in the GIA that:

> In the event of any payment or disbursement by [GMIC], the Indemnitors agree to immediately reimburse [GMIC] for any and all payments and disbursements made (including, but not limited to, interest from the date of [GMIC's] payments at the

maximum rate allowable) under [GMIC's] believe that liability for the payments existed or that payment was necessary or expedient, whether or not such liability, necessary or expediency existed. Vouchers or other evidence of payment by [GMIC] shall be conclusive evidence of the fact and amount of such liability, necessity, or expediency o he Indemnitors' liability to [GMIC] therefor.

GIA, ¶ 3

17.     UECC thereafter entered into a contract with John Moriarty & Associates of Florida, Inc. for labor and materials in connection with a project known as the X-Las Olas (the "Project").

18.     At the Indemnitors' request, and in consideration of the Indemnitors' promise to comply with the various terms and conditions of the GIA, GMIC agreed to issue bond number GMIC-SB-2381144 in the amount of $8,257,250.00 (the "Bond") naming John Moriarty & Associates of Florida, Inc. as obligee. A copy of the Bond is attached hereto and incorporated herein by reference as **Exhibit "B"**.

19.     On or about March 16, 2020, UECC entered into a subcontract with Security Innovative Solutions ("SIS") for certain labor, materials and equipment in connection with the Project.

20.     On or about June 16, 2021, GMIC received a claim from SIS alleging nonpayment for the sum of $108,212.04 (the "Claim"). Through GMIC's investigation of the Claim, GMIC determined that there did not appear to be any defense for the unpaid retainage portion of the claim.  Furthermore, UECC conceded that SIS was owed the amount claimed on the Bond issued by GMIC.

21.     In light of GMIC's investigation, on August 13, 2021, GMIC provided UECC with formal notice that GMIC intended to resolve the Claim and would seek indemnification from the Indemnitors thereafter.

22. On or about August 24, 2021, UECC agreed to make an initial payment in an amount between $40,000 and $50,000 on or before August 27, 2021 directly to GMIC and thereafter establish a payment plan for the remaining balance.

23. On August 25, 2021, GMIC entered into a Release and Assignment with SIS for the sum of $108,212.04 to settle the Claim against the Bond.

24. To date, GMIC has not received any payment from UECC and therefore has and will continue to incur, significant losses as a result of issuing the Bond.

25. As a result of UECC's failure or refusal to fulfill its payment obligations, GMIC was forced to hire the undersigned attorneys to respond to, investigate, and to resolve the Claim.

26. GMIC has retained the undersigned attorneys to represent it in this action. GMIC is obligated to pay these attorneys a reasonable fee for the services rendered and such fees must be reimbursed by the indemnitors under the GIA. The fees, costs and expenses that GMIC incurs relating to bringing and maintain this action are separate from the fees, costs and expenses that GMIC incurred as part of responding to, investigating, defending against and, resolving the Claim on the Bond and other events leading up to the filing of the Complaint.

27. All conditions precedent to maintaining this action have occurred, been excused or otherwise waived.

## COUNT I
**(Breach of GIA/Contractual Indemnity)**

28. GMIC realleges and incorporates paragraphs 1 through 27 above as though fully set forth herein.

29. The GIA is unequivocal and specific in setting forth the Indemnitors' obligations to:

> …exonerate, indemnify, and hold harmless [GMIC] from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [GMIC] may pay or incur, including, but not limited to, loss, interest, court costs and consultant and attorney fees (a) by having executed or procured the execution of the bonds; or (b) in making an independent investigation of any claim, demand, or suit; or (c) in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether [GMIC], in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend [GMIC]; or (d) in enforcing any of the covenants, terms and conditions of this Agreement.

GIA, ¶ 2

30. The Indemnitors have committed various breaches and defaults of the GIA, including, but not limited to: (1) failing and/or refusing to resolve or pay the Claim; and (2) failing and/or refusing to indemnify and keep GMIC indemnified from any and all liability for losses and expenses of whatsoever kind or nature that GMIC has incurred, or may incur, relating to claims made on the Bond.

31. As a result of the Indemnitors' breaches and defaults of the GIA, GMIC has suffered damages, including, but not limited to, the following damages: (1) payment made to satisfy the Claim made on the Bond; and (2) attorneys' fees, costs and other expenses that GMIC has incurred as a result of issuing the Bond and the Claim made on the same.

32. GMIC is entitled to an award of its attorneys' fees and costs in pursuing this claim according to the GIA.

WHEREFORE, GMIC demands judgment against the Indemnitors, jointly and severally, for damages, prejudgment interest, attorneys' fees, costs and expenses and such other further relief as this Court deems just and proper.

## COUNT IV
### (Common Law Indemnity)

33. GMIC realleges and incorporates paragraphs 1 through 27 above as though fully set forth herein.

34. GMIC is without fault for any past, present or future claims against it as surety for UECC.

35. GMIC had a special relationship with UECC by virtue of issuing the Bond and acting as UECC's surety.

36. GMIC's liability under the Bond, if any, is merely technical, secondary and vicarious to that of UECC, which it is actively and completely at fault for, and obligated to timely pay, any underlying liability on the Bond, including without limitation, any liability for the Claim.

37. As a direct and proximate result of UECC's failure to honor its obligations, GMIC has incurred and continues to incur damages, losses and expenses including attorneys' fees, costs and expenses, by reason of having executed the Bond.

38. UECC is liable to GMIC for all damages GMIC has sustained or may sustain by reason of having acted as surety for UECC, including, without limitation, all payments GMIC has made to satisfy the Claim, and all attorneys' fees GMIC incurs as a result of issuing the Bond.

39. GMIC's damages will continue to increase as GMIC incurs future losses, and costs, including attorneys' fees.

40. GMIC is entitled to receive its reasonable incurred attorneys' fees pursuant to applicable law.

WHEREFORE, GMIC requests that this Court enter a judgment against the Indemnitors jointly and severally for damages, attorneys' fees, prejudgment interest, costs, expenses, and such further relief as this Court deems just and proper.

Dated: September 17, 2021.

/s/ *Ty G. Thompson*
TY G. THOMPSON, ESQ.
Florida Bar No. 0585041
Email: tthompson@mpdlegal.com
Secondary: mlewis@mpdlegal.com
EMILY M. HEIM, ESQ.
Florida Bar No. 1015867
Email: eheim@mpdlegal.com
Secondary: sclemts@mpdlegal.com
MILLS PASKERT DIVERS
100 North Tampa Street, Suite 3700
Tampa, Florida 33602
813-229-3500 – telephone
813-229-3502 – facsimile
*Counsel for Great Midwest Insurance Company*